IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SANTOS HERNANDEZ-CARRERA, and
PABLO SANTIAGO HERNANDEZ-ARENADO,

                          Petitioners,

           v.                            CASE NO. 05-3051-RDR

KEN CARLSON, Field Office Director,
Immigration and Customs Enforcement,
Department of Homeland Security, and
E.J. GALLEGOS, Warden of the United
States Penitentiary at Leavenworth, Kansas[1]

                 Respondents.


                 <u>MEMORANDUM AND ORDER</u>

     Before the court are two habeas petitions remaining from six

petitions consolidated by the court.[2]  Each petitioner seeks relief

under 28 U.S.C. § 2241 from his continued detention in a federal

penitentiary in Leavenworth, Kansas.   Having reviewed the record

which includes respondent's supplemented answer and return, and

petitioners' supplemented traverse, the court grants each remaining

petitioner's application for a writ of habeas corpus.

     *Background*

     Petitioners  Santos  Hernandez-Carrera  and  Pablo  Santiago

Hernandez-Arenado are natives and citizens of Cuba who illegally

entered the United States in the Mariel boatlift in 1980, and are

_____

     [1]Pursuant to respondent's unopposed request in the supplemented
answer and return (Doc. 56), the court amends the caption to include
the Warden at the United States Penitentiary at Leavenworth, Kansas,
where petitioners are currently confined, as a respondent in this
matter.

     [2]The court dismissed four petitions as moot when the petitioner
in each case was subsequently released from detention.

classified as inadmissible aliens.[3]  Each was granted immigration parole in the United States, and in each case that parole was later revoked based in part on each petitioner's one or more criminal convictions while on parole.  Immigration judges issued exclusion and deportation orders for each petitioner, based upon each petitioner's lack of entry documents and their convictions for crimes of moral turpitude.  Petitioners have been detained thereafter in the custody of the Immigration and Naturalization Services, now the Immigrations and Customs Enforcement in the Department of Homeland Security.

Petitioners filed the instant petition for habeas corpus relief under 28 U.S.C. § 2241, seeking their release from detention they claim is unconstitutional.

Discussion

A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not

---

[3]"Inadmissible alien" is the current terminology for each petitioner's status, as explained by the Tenth Circuit Court of Appeals:

"Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996. *See* Pub.L. No. 104-208, 110 Stat. 3009, 3009-546 (1996).  The statute made comprehensive changes to the Immigration and Nationality Act (INA), including changes in immigration terminology. Prior to IIRIRA, individuals who were ineligible for admission to the United States were referred to as "excludable," while those who had gained admission were referred to as "deportable." *See* 8 U.S.C. §§ 1182, 1251 (1994).  Excludable aliens are now referred to as "inadmissible" aliens.  *See* 8 U.S.C. § 1182.  In addition, the amended INA now uses the term "removal proceedings" to refer to the proceedings applicable to both inadmissable and deportable aliens. *See* 8 U.S.C. § 1229a." Morales-Fernandez v. I.N.S., 418 F.3d 1116, 1118 n.3 (10th Cir. 2005).

extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  This Court has subject matter jurisdiction over the petitions under § 2241 because petitioners were detained within its jurisdiction in federal custody at the time they filed their petitions, asserting their detention is not statutorily authorized and violates their constitutional rights.

B. Legality of Detention

Petitioners are being detained pursuant to 8 U.S.C. § 1213(a)(6), a statute providing for the detention of aliens after their removal from the United States has been ordered but repatriation to their country or a third country is not foreseeable, and pursuant to 8 C.F.R. § 241.14(f), a regulation providing for the continued detention of aliens found to pose a special danger to the public.  Petitioners maintain that their detention pursuant to 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court is unconstitutional, and that 8 C.F.R. § 241.14(f) unlawfully exceeds its statutory authority.  The court agrees.[4]

*8 U.S.C. § 1231(a)(6)*

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, as comprehensively amended by the Immigration Reform and Immigrant Responsibility Act of 1996, controls the admission and removal of aliens from the United States.  Petitioners Hernandez-Carrera and Hernandez-Arenado, who entered the United States with no valid entry

---

[4]Accordingly, the court does not address petitioner's alternative claim that if their confinement is statutorily authorized, petitioners contend the regulatory procedures provided for their continued detention are insufficient to satisfy the Due Process Clause.

or admission documents, are inadmissible aliens who have had final orders of removal entered against them in 1993 and 1991, respectively.

Generally, the Attorney General is required to effect an alien's removal within 90 days of the issuance of a removal order, 8 U.S.C. § 1231(a)(1)(A), with detention thereafter as authorized by 8 U.S.C. § 1231(a)(6) pending the alien's removal.   Section 1231(a)(6) provides in relevant part for the continued detention of three categories of aliens who have been ordered removed from the United States:   (1) those who are inadmissible under 8 U.S.C. § 1182, (2) those who are removable under specified sections of 8 U.S.C. § 1227(a), or (3) those who have been determined to be "a risk to the community or unlikely to comply with the order of removal."   The statute further provides that if released, an alien "shall be subject to the terms of supervision" as set forth in 8 U.S.C. § 1231(a)(3).[5]

---

[5]8 U.S.C. § 1231(a)(3), providing for supervision of an alien after the 90-day period in § 1231(a)(1)(A), reads:
> "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien-
> > (A) to appear before an immigration officer periodically for identification;
> > (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> > (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> > (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."

In 2001, the Supreme Court examined 8 U.S.C. § 1231(a)(6) as it applied to the second category of aliens and concluded that indefinite detention under that statute of an *admitted* resident alien who could not be promptly removed to his own or a third country presented "a serious constitutional threat" to the alien's rights under the Due Process Clause. <u>Zadvyas v. Davis</u>, 533 U.S. 678, 696 and 699 (2001). To avoid this constitutional defect, the Supreme Court applied the doctrine of constitutional avoidance in statutory interpretation and held the statute must be read as limiting an alien's post-removal period of detention to the time reasonably necessary to remove an alien from the United States. <u>Id</u>. at 699. The Court also set a presumptive six month period as a reasonably necessary period of detention to effect a resident alien's removal. <u>Id</u>. at 701. As a result, once removal was no longer reasonably foreseeable, an admitted alien's continued detention beyond the presumptively reasonable six month period was no longer authorized by 8 U.S.C. § 1231(a)(6)] and the alien must be released subject to appropriate conditions. <u>Id</u>. at 699-700.

Following <u>Zadvydas</u>, the Attorney General promulgated regulations that detailed procedures to be followed for any continued detention of an alien whose removal was not significantly likely to occur in the reasonably foreseeable future. See 8 C.F.R. § 241.14. Significant to petitioners in this case, those regulations provided for the continued detention under "special circumstances" of removable aliens who pose a special danger to the public because of their proven history of violent criminal activity

and mental illness.  *See* 8 C.F.R. 241.14(f).[6]

In 2005, the Supreme Court again addressed § 1231(a)(6) as it applied to the first category of aliens, *inadmissible* aliens such as petitioners in the instant case, and concluded its reading of § 1231(a)(6) in <u>Zadvydas</u> was controlling because the statute could not be interpreted differently when applied to various types of aliens. <u>Clark v. Martinez</u>, 543 U.S. 371, 378 (2005).[7]  Thus a presumptive six-month period of detention under 8 U.S.C. § 1231(a)(6) applies to both admissible and inadmissible aliens after issuance of a final order of removal, and further detention pursuant to § 1231(a)(6) is

_____

[6] 8 C.F.R. § 241.14(f)(1) provides that the Government shall detain an alien if the alien's release "would pose a special danger to the public" because (1) he previously committed one or more crimes of violence; (2) he is likely to engage in acts of violence in the future due to a mental condition or personality disorder and behavior associated with that condition or disorder; and (3) no conditions of release can reasonably be expected to ensure the safety fo the public.

To determine whether an alien is "specially dangerous," 8 C.F.R. § 241.14(f)(2)-(3) requires the DHS to arrange for a report by a U.S. Public Health Service physician based on a full medical and psychiatric examination of the alien.  If the DHS determines from this information that an alien's release would pose a special danger to the public, 8 C.F.R. § 241.14(g)-(h) requires the case to be referred to an immigration judge for a reasonable cause hearing to determine whether the evidence supporting the DHS's determination is sufficient to warrant a further hearing on the merits.  If reasonable cause is found to conduct a merits hearing, 8 C.F.R. § 241.14(i)(1)-(2) requires the government to prove by clear and convincing evidence that the alien should remain in federal custody because his release would pose a special danger to the public.  If an alien is ordered to remain in custody, 8 C.F.R. § 241.14(k) requires ongoing, periodic review of his continued detention.

[7]<u>Clark v. Martinez</u> involved two separate appeals by Mariel Cubans who claimed their continued detention was unlawful.  In one appeal, the District of Oregon granted petitioner Martinez a writ of habeas corpus, affirmed by the Ninth Circuit Court of Appeals. Although courts often refer to the Supreme Court's decision as <u>Clark</u>, the name of the lead respondent in Martinez's case, the Supreme Court cites to its decision using petitioner Martinez's name.  *See e.g,* <u>Spector v. Norwegian Cruise Line Ltd.</u>, 545 U.S. 119 (2005).

improper if the alien demonstrates, and the government fails to rebut, the lack of a significant likelihood of the alien's removal in the reasonably foreseeable future. Id. at 386-87; Zadvydas, 533 U.S. at 701. See e.g., Morales-Fernandez v. Immigration & Naturalization Service, 418 F.3d 1116 (10th Cir. 2005)(applying the holdings in Zadvydas and Martinez to find plain error in the district court's dismissal of § 2241 petition brought by Mariel Cuban).

In response to Martinez, the government initiated the post-Zadvydas procedural review of Hernandez-Carrera's and Hernandez-Arenado's detention in May 2005, and determined their continued detention was warranted as provided by 8 C.F.R. 241.14(f).

Pursuant to the holdings in Zadvydas and Martinez, petitioners Hernandez-Carrera and Hernandez-Arenado filed the instant petitions to claim their continued detention pursuant to 8 U.S.C. § 1231(a)(6) is unconstitutional, and to seek their release on supervision with appropriate conditions.

Respondent counters that Zadvydas and Martinez can and should be read as not deciding the exact issue presented in this matter, namely whether it is unconstitutional to continue the detention of an alien, for whom removal is not reasonably foreseeable, beyond the presumptive six month post-removal detention period if the alien has a harm-threatening mental illness and is likely to engage in violent behavior if released such that public safety cannot reasonably be guaranteed.  To support this contention, respondent reads Zadvydas and Martinez as leaving open the possibility of preventive civil detention under 8 U.S.C. § 1231(a)(6) of aliens where special circumstances, such as harm-threatening mental illness, warrant

continued detention to protect public safety.   Respondent also argues for deference to the Attorney General's interpretation of 8 U.S.C. § 1231(a)(6) in promulgating 8 C.F.R. 241.14(f) as lawfully providing for the continued detention of specially dangerous aliens like petitioners.

Nonetheless, the Supreme Court has unequivocally stated that its interpretation and reading of 8 U.S.C. § 1231(a)(6) in Zadvydas "applies without differential to all three categories of aliens that are its subject." Martinez, 543 U.S. at 378.   Additionally, courts have rejected any reading of Zadvydas and Martinez as allowing a separate interpretation of § 1231(a)(6) for the third category of aliens in that statute.   See Tuan Thai v. Ashcroft, 366 F.3d 790 (9th Cir.)(Supreme Court's interpretation of § 1231(a)(6) does not authorize continued detention of alien suffering from harm-threatening mental illness for longer than the presumptive six-month post-removal period authorized in Zadvydas where the alien's removal from the United States is not reasonably foreseeable), rehearing denied, 389 F.3d 967 (2004); Tran v. Gonzales, 411 F.Supp.2d 658 (W.D.La. 2006)(holding and reasoning in Martinez necessarily applies to third category of aliens in § 1231(a)(6)), aff'd sub nom. Tran v. Mukasey, 515 F.3d 478 (5th Cir. 2008).

Most recently in Tran, the Fifth Circuit rejected the government's reading of Zadvydas, and found the Supreme Court did not create an exception for detention of mentally ill aliens beyond the presumptive six month post-removal period.   Id. at 483.   It further held the regulation authorizing the continued detention of a removable alien having no significant likelihood of being removed in the reasonably foreseeable future, and who had been determined

"specially dangerous" because of mental illness that would likely cause him to commit future acts of violence, was not a permissible interpretation of 28 U.S.C. § 1231(a)(6)).  Id. at 485.

The court finds no meaningful way to distinguish the facts and circumstances of the two remaining petitioners in the present case from the petitioners in Tuan Thai and Tran, and thus adopts and incorporates the reasoning of those courts and reaches the same conclusion.  Petitioners' continued detention for more than six months after a final order of removal has been entered with no reasonably foreseeable likelihood of either petitioner's repatriation is not authorized by 8 U.S.C. § 1231(a)(6), and cannot be effected through 8 C.F.R. § 241.14(f) in manner manifestly contrary to its authorizing statute as interpreted by the Supreme Court.[8]

B. Public Safety

Although respondent argues that the Attorney General's ability to protect the public from aliens who pose a special danger by their propensity for violence and mental illness is undermined if 8 U.S.C. § 1231(a)(6) is not read as encompassing the right under "special circumstances" to detain removable aliens, this argument is unavailing and contrary to explicit Supreme Court directives.

In Zadvydas, the Supreme Court stated that "once the flight risk justification [for continued detention under 8 U.S.C. § 1231(a)(6)] evaporates, the only special circumstance present is the alien's removable status itself, which bears no relation to a

_____

[8]See United States v. Larionoff, 431 U.S. 864, 873 n. 12 (1977)("For regulations, in order to be valid must be consistent with the statute under which they are promulgated.").

detainee's dangerousness." <u>Zadvydas</u>, 533 U.S. at 691-92.   And <u>Martinez</u> rejected the government's argument that <u>Zadvydas</u> allowed § 1231(a)(6) to be read as authorizing detention of aliens until it approaches constitutional limits.   *See* <u>Martinez</u>, 543 U.S. at 384 ("In <u>Zadvydas</u>, it was the statute's text read in light of its purpose, not some implicit statutory command to avoid approaching constitutional limits, which produced the rule that the Secretary may detain aliens only for the period reasonably necessary to bring about their removal.").   <u>Id</u>. (*citing* <u>Zadvydas</u>, 533 U.S. at 697-99).

Zadvydas and <u>Martinez</u> decide the constitutional extent of the Attorney General's authority under 8 U.S.C. § 1231(a)(6) to detain an alien who has been ordered removed from the country but for whom repatriation is not likely or foreseeable.   Once the presumptively reasonable six month period for removal of such an alien has expired, further detention pursuant to 8 U.S.C. § 1231(a)(6) is improper and the alien must be released subject to conditions of supervision.   See 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5.   See also <u>Tran</u>, 515 F.3d at 485 (while sympathetic to the government's concern for public safety, the court has no power to authorize the petitioner's continued detention under § 1231(a)(6)).

Such conditions clearly can address public safety concerns. *See e.g.*, <u>Nquyen v. B.I. Inc.</u>, 435 F.Supp.2d 1109 (D.Or. 2006)(recognizing indefinite detention of alien subject to final order of removal who is considered dangerous is not allowed after <u>Zadvydas</u>, and discussing alien's release with conditions of supervision into the Intensive Supervision Appearance Program). Moreover, noncompliance with the conditions of release subjects an alien to criminal prosecution and penalties, including further

detention.  See 8 U.S.C. § 1253(b).  *See also* <u>Zadvydas</u>, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

After <u>Zadvydas</u>, Congress acted to further protect the public from the release of aliens who threaten national security.[9]  If further detention of aliens with mental illness or threat of violence is required to protect public safety, rather than the supervised release which is currently authorized, Congress has not yet acted to provide such additional protection.

### Conclusion

In the present case, there is no likelihood that petitioners will be removed from the United States in the reasonably foreseeable future.  Because petitioners' continued detention is not authorized by 8 U.S.C. § 1231(a)(6), and because 8 C.F.R. § 241.14(f) cannot operate to detain petitioners beyond the purpose and limits imposed

---

[9]As noted by the Supreme Court:
"That Congress has the capacity to [attend to security concerns arising from the Court's interpretation of § 1231(a)(6)] is demonstrated by its reaction to our decision in <u>Zadvydas</u>. Less than four months after the release of our opinion, Congress enacted a statute which expressly authorized continued detention, for a period of six months beyond the removal period (and renewable indefinitely), of any alien (1) whose removal is not reasonably foreseeable and (2) who presents a national security threat or has been involved in terrorist activities.  Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA PATRIOT ACT), § 412(a), 115 Stat. 350 (enacted Oct. 26, 2001) (codified at 8 U.S.C. § 1226a(a)(6) (2000 ed., Supp. II))." <u>Martinez</u>, 543 U.S. at 386, n.8.

by § 1231(a)(6), each petitioner is entitled to release under appropriate conditions of supervision.

IT IS THEREFORE ORDERED that the caption is amended to add E.J. Gallegos, the Warden of the United States Penitentiary in Leavenworth, Kansas, as a respondent in this matter.

IT IS FURTHER ORDERED that petitioners' applications for writs of habeas corpus under 28 U.S.C. § 2241 are granted, and that each petitioner must be released within fourteen (14) days of the date of this order, subject to appropriate conditions of supervision.

**IT IS SO ORDERED.**

DATED: This 31st day of March 2008, at Topeka, Kansas.


 s/ Richard D. Rogers
RICHARD D. ROGERS
United States District Judge